IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD RAY BROWN,  *
        Plaintiff,
   v.  *   CIVIL ACTION NO. CCB-12-3225

MYLETA OBSU, M.D.  *
        Defendants.
                        ***

MEMORANDUM

I.    PROCEDURAL HISTORY

In his original petition filed on October 25, 2012, plaintiff Donald Ray Brown ("Brown") sought release from confinement and compensatory and punitive damages, alleging that the Maryland Division of Correction was holding him against his will on segregation even after he had a heart attack. He claimed that he was due for a follow-up cardiology appointment following atrial fibrillation episodes but was never seen. Brown further complained that he has severe prostate and bladder problems and that biopsies ordered by his physician have never been provided. He alleged that the recommendations of cardiologists at University of Maryland Medical Center ("UMMC") have not been followed. ECF No. 1.

In his court-ordered amended complaint, plaintiff alleged that he did not receive the follow-up care ordered while he was confined at the Talbot County Jail. Brown claimed that if he had seen the cardiologist he would not have experienced a heart attack in October of 2012. He further complained that his claims of blood in his urine were treated as an infection and although he was sent to Bon Secours Hospital ("BSH"), a recommended CT scan was not performed. Next, Brown complained that Dr. Obsu refused to order an MRI of his brain and neck as recommended by a neurologist for plaintiff's imbalance and has not ordered imaging of his aortic and iliac aneurisms. ECF No. 3.

On December 19, 2012, the Division of Correction was dismissed from the complaint and Dr. Myleta Obsu was added as a defendant. ECF No. 6. On January 7, 2013, plaintiff filed a supplemental complaint adding Contah Nimely, M.D. and Wexford Health Services as defendants. ECF No. 7. He complained that when he arrived at the Maryland Correctional Training Center he was not given a preliminary evaluation, but was placed on segregation due to an altercation with another inmate. Brown asserted that when seen by Dr. Nimely for his urinary bleeding she simply prescribed more antibiotics and did not order a CT scan, nor did she order imaging of his aneurisms. Plaintiff also complained of a loose and painful tooth. *Id.*

On February 13, 2013, plaintiff filed another supplemental complaint. He alleged that a CT scan revealed two cancerous tumors in his bladder for which he has received no treatment. ECF No. 13. Brown complained that the condition began to manifest itself in May of 2012, but was ignored by medical providers. He claimed that he will likely have to undergo "radical surgery" to remove his bladder and he will have to wear a catheter bag on his side. *Id*. On February 15, 2013, the court received another supplemental complaint from plaintiff in which he alleged that he was moved to another housing unit further away from the prison cafeteria and dispensary, requiring him to walk a distance to satisfy his "special needs."[1] ECF No. 15. On February 25, 2013, another supplemental complaint was filed by Brown, who complained that he was made to sit in a holding cell at MCTC for several hours while awaiting transfer to the Maryland Correctional Institution ("MCIH"). ECF No. 20. He claimed that he was denied treatment in the dispensary for chest pains and swollen feet, ankles, and legs and has yet to be afforded an "eat in" meal plan. Brown also complained that he was not given his blood pressure or heart medication upon his transfer to MCIH.

---

[1] Brown has filed correspondence with the court seeking an emergency injunction to be given pain medication, to be assigned to the hospital, and to be placed on an "eat in" food plan. ECF Nos. 17, 18,

*Id*. On February 26, 2013, the court received an "addendum" and supplemental complaint from plaintiff in which he complained that he is required to walk distances to get his medication and meals within a limited period of time, placing a severe burden on his health. ECF Nos. 21 & 22. He further complained that his housing unit has been condemned and ordered closed, he has not received medical treatment, and his requests to have food brought to him were denied. *Id*.

II. PENDING MOTIONS

Currently pending are defendants' motion to dismiss or, in the alternative, motion for summary judgment; Brown's oppositions; and defendants' rebuttal. (ECF Nos. 25, 26, 30, 34, 35, 38, & 41). The undersigned has examined the medical records and exhibits submitted by the parties and finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2011). For reasons to follow, defendants' motion, construed as a motion for summary judgment, will be granted.

III. STANDARD OF REVIEW

Under revised Fed. R. Civ. P. 56(a):

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law. In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a

---

19.
3

verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial. In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005).

IV. DISCUSSION

1. Facts

Brown is a 64-year-old male with a medical history significant for cardiovascular\coronary disease, atrial fibrillation, abdominal aortic aneurysm repair, hypertension, hyperlipidemia, chronic kidney disease, hematuria, bladder masses, benign prostatic hypertrophy, gastroesophageal reflux disease, degenerative disease of the lumber spine, and spinal stenosis. ECF No. 25 at p. 255. Plaintiff also has a history of bipolar disorder, major depression, and post-traumatic stress disorder ("PTSD"). *Id*. at pgs. 11 & 255.

Defendants state that Brown has been treated for his complaints of intermittent hematuria (blood in the urine) since May of 2012. He was initially treated with antibiotics, and defendants claim that the symptoms resolved. On July 12, 2012, plaintiff was seen by Dr. Obsu in the Chronic Care Clinic ("CCC"), and at that time he raised no complaints of any urinary issues. He did raise complaints regarding the frequency of urination in August of 2012. Dr. Obsu ordered a urine culture and urinalysis, the findings of which were unremarkable except for trace protein and blood. *Id*. at pgs. 13, 266, & 267. On September 5, 2012, Brown was seen by Dr. Obsu for complaints of dysuria (difficult or painful urination) and hematuria. *Id*. at pgs. 19-20. The doctor ordered a repeat urine culture and urinalysis. That study showed evidence of 3+ protein and 3+ blood in Brown's urine. *Id*. at pgs. 269-270. Dr. Obsu submitted a request for a urology specialist. *Id*. at pgs. 22-23. On September 25, 2012, plaintiff saw urologist Dr. Lawrence Scipio at Bon Secours Hospital ("BSH"). His impression was that plaintiff had benign prostate hypertrophy and a urinary tract infection ("UTI"). He recommended that a CT scan of the abdomen and pelvis be conducted to rule out an obstruction. In addition, Dr. Scipio recommended a cardiology consult for assessment of plaintiff's atrial fibrillation medications as a contributing factor to the cause of his urinary bleeding. ECF No. 26 at p. 258.

Dr. Obsu submitted a request for approval of a cardiac consult and CT study on October 5, 2012. The CT study was approved on October 11, 2012, the day that plaintiff was transferred to MCTC. *Id*. at pgs. 31-37 & 42. Unfortunately, on October 15, 2012, Brown had an onset of chest pain requiring his transfer to Meritus Medical Center in Hagerstown, Maryland, where he was treated by cardiovascular specialists and diagnosed with a myocardial infarction. *Id*. at pgs. 44-48, & 225-229. He underwent a cardiac catheterization which showed moderate coronary artery disease not requiring any stenting. He was discharged with a prescription for Plavix. *Id*. at pgs. 49-50, &

225. On October 22, 2012, according to the defendants, Brown was scheduled for an off-site specialist consultation, but refused the transport. *Id*. at p. 52. On October 25 and 26, 2012, he was seen by nursing staff for complaints of burning during urination. A follow-up urinalysis and urine culture were ordered, and an antibiotic was prescribed. Brown reported he was feeling better. *Id*. at pgs. 54-56.

On October 31, 2012, Brown was seen for the first time by Dr. Nimely in the CCC. No reports of dysuria and hematuria were made, but plaintiff's heart rate was noted to be slightly elevated. Dr. Nimely increased the dosage of Brown's Metroprolol medication. On November 14 and 22, 2012, plaintiff was seen for his complaints of increased bleeding on urination. *Id*. at pgs. 62-67. Dr. Nimely noted that the CT scan had been approved, but personnel were awaiting the scheduling of the scan. Dr. Nimely submitted another request and noted a diagnosis of a UTI or side effects from the Plavix. The Plavix was withheld and plaintiff was prescribed the antibiotic Rocephin. ECF No. 26 at pg. 65.

On November 20, 2012, plaintiff was seen by a physician's assistant ("PA") for complaints of chest pain on exertion which he had reported upon walking to the cafeteria. The objective examination revealed no abnormalities; plaintiff was found to be in no distress and his heart rate and rhythm were normal with no edema to his extremities. Brown was prescribed Nitrostat for his claims of chest pain. *Id*. at pgs. 74-75. On December 5, 2012, Brown came to the medical department with abdominal and supra-pubic pain and gross hematuria on urination. *Id*. at pgs. 100-104. He was transferred that same day to BSH Emergency Department for assessment and possible hospitalization. *Id*. at pgs. 231-233. CT imaging revealed the enlargement of an abdominal aortic aneurysm and the presence of two polypoid (resembling a polyp) bladder masses deemed

6

"worrisome" for possible bladder cancer and requiring further investigation with cystoscopy and biopsy. *Id*. at pgs. 238, & 244-245.

In light of these findings, Brown was first transferred to Mercy Hospital ("Mercy") on December 7, 2012, for surgical intervention to repair the abdominal aortic aneurysm. *Id*. at pgs. 255-257. Following the performance of endovascular aneurysm repair with the coiling of the right internal iliac artery, Brown was discharged from Mercy on December 12, 2012 and assigned to the MCIH infirmary for post-operative recuperation and care. *Id*. at pgs. 110-158. Five days later plaintiff was discharged from the infirmary to general population. Recommendations for follow-up appointments with the urology and vascular surgeon were recorded, with Brown's cardiovascular issues taking priority. Medical assignment orders were entered for Brown to have a bottom bunk for thirty days and in-cell feeding[2] and administration for two weeks. *Id*. at pgs. 159-169.

On December 21, 2012, plaintiff was seen by Dr. Nimely for a post-operative evaluation. ECF No. 26 at pgs. 170-171. Plaintiff reported continued hematuria and was advised that a follow-up evaluation with the urologist was pending. Brown's Metroprolol was increased due to an elevated blood pressure. *Id*. Dr. Nimely observed no edema or cyanosis when examining plaintiff's extremities. On December 28, 2012, plaintiff was seen by Dr. Nimely for an additional post-operative evaluation. He complained that he was not receiving his pain medication. No abnormalities were noted. *Id*. at pgs. 180-181.

On January 11, 2013, Brown was seen by PA Griffith for complaints of pelvic pain, intermittent hematuria, decreased ambulation, loss of appetite and leg cramping. *Id*. at pgs. 191-192. No cardiovascular abnormalities were noted, and plaintiff was advised of his upcoming follow-up evaluation with a cardiovascular surgeon. Defendants affirm, however, that on January 14, 2013,

7

plaintiff signed off on this off-site appointment with the surgeon. He was seen the following day by Dr. Nimely and reported that he was no longer vomiting, had a good appetite and was exercising by walking the tier. The cardiovascular assessment was normal. *Id*. at pgs. 196-197.

On February 5, 2013, Nimely evaluated Brown in anticipation of his scheduled cystoscopy and biopsy procedure. He was found to be stable and was cleared for the procedure. Dr. Nimely noted, however, that plaintiff indicated he would not go for the procedure if it conflicted with his trip to the commissary. He was advised of the dangers in delaying the procedure. *Id*. at pgs. 312-314; Ex. 2. Nonetheless, on February 11, 2013, Brown refused transport for his appointment to the urologist to complete the cystoscopy and biopsy of the mass. On February 14, 2013, plaintiff was seen by the nurse for complaints of chest pain and difficulty walking to the dispensary. An EKG was conducted and found normal. Bilateral leg edema was noted. *Id*. at pgs. 329-330. The following day Brown was again seen by nursing staff for complaints about his new housing assignment and the distance to the cafeteria. He requested re-assignment to another housing unit. ECF No. 26 at p. 334.

On February 18, 2013, Dr. Nimely submitted a request for reevaluation of plaintiff by the cardiologist to reassess his condition and medications and to determine whether the Plavix should be restarted and aspirin therapy continued given plaintiff's hematuria. Plaintiff's off-site cardiovascular consult was rescheduled for March 1, 2013. ECF No. 26 at Ex. 2 at p. 6.

On February 19, 2013, Brown was transferred to MCIH. On February 20, 2013, plaintiff was seen by nursing staff for complaints of chest pain and difficulty in walking to the cafeteria. The cardiovascular exam was normal, but swelling of the extremities was noted. Brown was advised that he was to be seen in the CCC within the next two weeks. Plaintiff submitted another sick-call slip

---

[2] The feed-in status was extended to February 1, 2013. ECF No. 26 at p. 263.

that same day indicating that he was going to go on a hunger strike and that he would refuse all medications and hospital visits, because medical staff were not treating him. ECF No. 26 at pgs. 353-358 & 364-365. In response, Brown was seen by nursing staff on February 22, 2013, and advised he would be referred to mental health staff. After he indicated he would not see a psychologist or psychiatrist, Brown was asked to sign an advanced directive and durable power of attorney for health care decisions.

Plaintiff was again seen by nursing staff after complaining of difficulty walking to the cafeteria and the medical line due to swollen feet. Brown's vital signs were normal, but edema was observed in his lower extremities. *Id*. at pgs. 359-361. Brown was advised that his request for special medical assignment for housing closer to the cafeteria and dispensary was under consideration.

In his first opposition, Brown seeks to move into evidence various documents which he states show that his hematuria and frequent urination was misdiagnosed by Dr. Obsu. ECF No. 30. In his supplemental opposition, Brown complains that his teeth have become painful and he has twice been examined by prison dentists, who state that all of his teeth need to be removed. ECF No. 34. In his third opposition, received for filing on April 10, 2013, Brown asserts that he is proceeding without his legal documents because they are in storage while he is confined in the Eastern Correctional Institution ("ECI") Infirmary. ECF No. 35. He complains that he has yet to see an oncologist or be taken to a "certified cancer center" for treatment.[3] He claims that merely because he has seen numerous doctors, that does not necessarily mean he has received treatment for his serious medical needs. He cites numerous legal opinions, claiming that their application to his particular case

---

[3] Brown asserts that BSH is a second-rate facility.

demonstrates the defendants have violated his Eighth Amendment rights. Brown also asserts that he has not received treatment for his various medical ailments, including bladder cancer, cataracts, dental problems, and cardiovascular disease, which he surmises would be helped by the placement of a pacemaker and an order for a cardiac diet. *Id*.

In rebuttal, defendants contend that Brown has articulated nothing more than a disagreement with health care providers in regard to his course of treatment. They assert that Brown continues to misrepresent the medical record as to the care he has received and argue that he has failed to dispute that his genitourinary, cardiac, and dental problems have been addressed in light of the documented medical record. ECF No. 38. Defendants additionally state that on February 13, 2013, it was determined that Brown would be treated palliatively for his dental concerns due to his history of heart disease and that no extractions would occur for least one year . *Id*. at Ex, 1, p. 62. In the interim, he is to be seen monthly for his dental needs, and if his condition worsens he would be referred offsite for further evaluation.

Defendants further indicate that on April 15, 2013, Brown underwent a cystoscopy and biopsy of the bladder masses previously identified on diagnostic imaging. The tissue specimen removed was consistent with urothelial or transitional cell carcinoma of the bladder. The evaluating urologist believed that the masses were operable and sought approval for expedited surgery. The surgery was approved on April 17, 2013, and the procedure was to be completed at Johns Hopkins Hospital Center ("JHHC"). Brown indicated, however, that he did not want to receive the surgery and that he wished to weigh his options with his attorney before making any decisions regarding treatment options. *Id*., pgs. 58-59.

Finally, in a "rebuttal" received on May 3, 2013, Brown again claims that he has met the deliberate indifference standard and shown that his bladder condition was misdiagnosed as an

infection of the prostate. He maintains that he cannot produce the medical record because the Director of Medical Records at ECI refuses to provide him with the documents. ECF No. 41. Brown states that he has consented to surgery after May 31, 2013, even though "he neither likes nor trusts Bon Secours Hospital."[4] *Id.*

   2.   Legal Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

---

[4] Brown contends that he has never heard he was to have the bladder surgery at Johns Hopkins Hospital Center but rather has told "it's either Bon Secours or Die." ECF No. 41 at p. 4.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer,* 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time; *Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge).

The complaints against the defendants must fail. Brown, an older inmate, suffers from a variety of illnesses including, but not limited to, hypertension, hyperlipidemia, atrial fibrillation, an aortic and iliac aneurysm, coronary artery disease ("CAD"), and PTSD. He has experienced frequent bouts of hematuria and dysuria and he has been diagnosed with bladder cancer, but at least once

refused surgery. While Brown was not treated as promptly as he would have liked or provided all the procedures he wanted, he was routinely examined by nurses, PAs, and physicians, who consulted with specialists; he had numerous diagnostic EKGs, urine, and blood tests; he was repeatedly subject to procedures and placed in the infirmary for observation and care; and had cystoscopic and surgical procedures at off-site hospitals. Further, he was prescribed antibiotics, beta blockers, anti-cholesterol medications, and pain medication as needed. The care he received was far from cursory. His frequent complaints of pain, hematuria, arrythymia, and chest discomfort were addressed by medical personnel, albeit in a conservative manner. There is no showing that any delays in treatment caused Brown to be detrimentally affected by the interruption in care. Indeed, it is arguable that Brown himself caused delays in treatment due to his refusal to sign off on necessary testing, consults, and surgeries and his subjective opinions that certain hospitals are not up to sufficiently high standards. His disagreement with the testing and treatment he received does not establish an Eighth Amendment violation.

Plaintiff also has filed an original and supplemental motion for emergency injunction. ECF No. 23 & 24. He complained that he was transferred to MCIH in retaliation for filing lawsuits and asks to be transferred to the Eastern Correctional Institution ("ECI") Annex. ECF No. 23. He further claimed that visitors were made to wait an hour to see him. ECF No. 24. Plaintiff is currently confined at the ECI infirmary. His injunction requests will be denied. In addition, Brown has filed motions for appointment of counsel. ECF Nos. 28 & 37. Given the rulings in this opinion, and because I find no exceptional circumstances warranting the assignment of a trained practitioner, Brown's motions for appointment of counsel shall be denied.[5]

---

[5] On May 2, 2013, Brown filed a motion to compel the production of his medical record for use in his federal civil rights cases and his upcoming state modification hearing. ECF No. 40. As Brown has been provided substantial copies of his medical record with the filing of defendants' summary judgment motion and rebuttal, the undersigned sees no need to grant his motion to compel the production of his medical record.

V. CONCLUSION

    For the aforementioned reasons, the court finds no Eighth Amendment violations. Defendants' motion will be granted. A separate Order follows.


Date: May 9, 2013                                                                                                                              /s/_____
                                                                                                                                        Catherine C. Blake
                                                                                                                                        United States District Judge

---

Indeed, as it appears that Brown is represented by counsel in *State v. Brown*, Criminal Case No. 20K11010009 (Talbot County Circuit Court), the record may be produced by his attorney at his modification hearing.